UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IESHA TAYLOR, | |
| Plaintiff, | No. 1:25-CV-00070 |
| v. | Judge Edmond E. Chang |
| CITY OF MARKHAM, | |
| Defendant. | |

**MEMORANDUM OPINION AND ORDER**

Iesha Taylor and her children live in a rented single-family home in Markham, Illinois. R. 23, Am. Compl. ¶ 6.[1] In November 2024, the City of Markham disconnected the water service to the home because Taylor's landlord failed to submit the required rental license application for the property. *Id.* ¶¶ 12–13. The landlord and property manager tried to restore service by submitting the missing license application, paying the water bill, paying all of the fines that the City imposed, and even going to City Hall. *Id.* ¶¶ 14, 17. But the City refused to turn the water back on. *Id.* ¶ 15.

So Taylor brought claims for equal protection and due process in the Cook County Circuit Court. *Id.* at 5–8. She also filed for a temporary restraining order and preliminary injunction against the City to compel it to restore water service. R. 1-2, Pl.'s Mot. The state court granted the temporary restraining order, so the City

---

[1]Citations to the record are "R." followed by the docket entry number and, if needed, a page or paragraph number.

restored water service to Taylor's home. Am. Compl. ¶ 29. The City then removed the case to federal court. R. 1, Notice of Removal.[2] Now, the City has moved to dismiss Taylor's Amended Complaint, contending that she fails to state a claim for relief. R. 26, Def.'s Mot. For the reasons explained below, the City's motion to dismiss is denied as to the equal protection claim but granted as to the due process claim. Taylor's motion for preliminary injunction is granted given the likelihood of success on the equal protection claim.

## I. Background

Iesha Taylor rents a single-family home located at 16236 Spauling Avenue, Markham, Illinois. Am. Compl. ¶ 6. She began living in the home with her children on September 6, 2024. *Id.* On October 12, 2024, Taylor saw a door tag on her doorknob from the Markham Water Department that told her that there was a "problem or discrepancy" with her home's water account. *Id.* ¶ 9. The tag asked for a response within five days. *Id.* So Taylor called the water department that day but was advised that there was no action for her to take because she was a tenant, not the landlord. *Id.* ¶ 10.

Taylor alleges that then, on November 18, 2024, the City of Markham disconnected the water service to her home because her landlord, Antonio Chase, had failed to comply with all of the necessary city licensing requirements for rental properties. *Id.* ¶¶ 12–13. Taylor alleges that from November 18 to November 27, she and the

---

[2]Subject-matter jurisdiction over the removal action is proper under 28 U.S.C. § 1331.

rental home's property manager made various efforts to have the City restore water service, including paying the water bill, going to City Hall, and contacting various City officials to ask about restoring water service. *Id.* ¶ 14. But Taylor says that the City refused to restore water service. *Id.* ¶ 15.

The City tells a different story. It alleges that after the Spaulding Avenue home was sold to Chase in May 2024, the water was shut off because Chase never applied for a water account for the property. R. 16, Def.'s Resp. Br. ¶¶ 4, 6. The City says that either Chase or his agent then illegally tampered with the home's water valve and turned the water supply back on. *Id.* ¶ 10. On November 18, 2024, after the City discovered this tampering, it again shut off water to the property. *Id.* ¶¶ 11–13.

After shutting off the water service in November, the City condemned Taylor's house and claimed that it was unfit for human occupancy because it lacked running water. Am. Compl. ¶ 16. So then Chase and the property manager submitted the required licensing documents to the City for review and paid all of the fines associated with failing to comply with the licensing requirements. *Id.* ¶ 17. But at its December city council meeting, the City postponed the licensing issue and said that it would address the issue at its January 2025 meeting. *Id.* ¶ 18. The City clarified to Taylor and Chase that water service would not be restored until Chase's license for the home was approved. *Id.* ¶ 19. Yet the City did not consider the licensing matter at the January meeting either. *Id.* ¶ 22. Instead, on January 2, 2025, the City imposed a moratorium on issuing all rental licenses, which is set to last until September 18, 2025. *Id.* ¶ 23.

Taylor filed this lawsuit in the Cook County Circuit Court, claiming that the City violated the Equal Protection Clause and the Due Process Clause of the Constitution. R. 1-1, Compl. She also filed for a temporary restraining order and preliminary injunction against the City to compel it to restore water service. Pl.'s Mot. After the state court granted Taylor's temporary restraining order, the City restored water service to her home. Am Compl. ¶ 29. The case was then removed to federal court, where the preliminary injunction motion remains pending—the City agreed to keep the water on until the motion was decided. Notice of Removal. Also, the City has now filed a motion to dismiss, arguing that Taylor fails to state a claim for relief. Def.'s Mot.

## II. Legal Standard

Under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up).[3] The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might

---

[3]This opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Ord. of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678–79.

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 22 (2008). The moving party must show: "(1) a likelihood of success on the merits; (2) a lack of an adequate remedy at law; and (3) that an irreparable harm will result if the injunction is not granted." *Lambert v. Buss*, 498 F.3d 446, 451 (7th Cir. 2007) (cleaned up). If the moving party meets these requirements, then the court balances the nature and degree of the potential harm to each party and the public interest. *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S.A., Inc.*, 549 F.3d 1079, 1086 (7th Cir. 2008), *abrogated on other grounds by Nken v. Holder*, 556 U.S. 418, 434 (2009).

### III. Analysis

### A. Motion to Dismiss

### 1. Equal Protection

Taylor begins by contending that the City of Markham has created two classes of tenants: "those with landlords who have complied with the licensing procedures and those with landlords who have not." R. 34, Pl.'s Resp. Br. at 10. She says that this distinction is irrational and serves no valid governmental interest, thus violating the Equal Protection Clause. *Id.* But the City counters that it does have rational reasons for distinguishing between these two tenant classes and for shutting off water to tenants whose landlords have not complied with the City's licensing procedures. R. 27, Def.'s Br. at 5–6. Even though rational-basis review is exceedingly deferential, the clear weight of authority says that Taylor has the better argument and properly states an Equal Protection claim.

"Where (as here) no fundamental right or suspect classification is at issue, equal protection claims are evaluated under the rational-basis standard of review." *Smith v. City of Chicago*, 457 F.3d 643, 650 (7th Cir. 2006). A governmental action "survives rational basis scrutiny if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose." *City of Chicago v. Shalala*, 189 F.3d 598, 605 (7th Cir. 1999) (cleaned up). So here, the City's decision to shut off water for tenants—like Taylor—whose landlords have not complied with licensing requirements violates the Equal Protection Clause if there is no rational relationship between that decision and some legitimate governmental purpose.

6

Taylor argues that by shutting off her water, the City is punishing an innocent tenant for the failures of her landlord to meet his legal obligations to the City. Pl.'s Resp. Br. at 10. And she points out that federal appellate courts have held that burdening innocent tenants in this context is irrational and violates the Equal Protection Clause. *Id.* at 10–11. That is correct.

For instance, in *Sterling v. Village of Maywood*, 579 F.2d 1350 (7th Cir. 1978), the Seventh Circuit held that a municipality violated the Equal Protection Clause by shutting off water service to a tenant based on her landlord's failure to pay the water bill. *Id.* at 1355. The Seventh Circuit reasoned that the municipality in effect put tenants into two categories: (1) those whose home "is encumbered with a pre-existing debt (for which they are not liable)," and (2) those "whose residence lacks the stigma of such charges." *Id.* (cleaned up). The Seventh Circuit then concluded that such "a collection scheme that divorces itself entirely from the reality of legal accountability for the debt involved, is devoid of logical relation to the collection of unpaid water bills from the defaulting debtor." *Id.* (cleaned up). In other words, the appeals court held that it is irrational for a municipality to punish an innocent tenant by shutting off water service due to the failure of her landlord to fulfill his legal obligation of paying the water bill. Three other federal circuits have arrived at the same conclusion. *Winston v. City of Syracuse*, 887 F.3d 553, 563 (2d Cir. 2018) ("[R]equiring a tenant without any legal obligation for a landlord's unpaid bill to pay that bill to retain or restore water service fails rational basis review."); *Golden v. City of Columbus*, 404 F.3d 950, 962 (6th Cir. 2005) ("[T]he person directly penalized by the scheme is not the debtor

7

but an innocent third party with whom the debtor contracted."); *O'Neal v. City of Seattle*, 66 F.3d 1064, 1068 (9th Cir. 1995) ("Proclaiming a goal of collecting the debt from anyone willing to pay does not give the City license to pursue payment by refusing water service to an unrelated, unobligated third party, whether that third party be the new tenant or any other stranger to the prior service agreement.").

That rationale applies with equal force here. The City shut off Taylor's water service because *Chase*—the landlord—failed to meet the City's licensing requirements for the rental property. Am. Compl. ¶ 13. So Taylor has no legal obligation here. She is not the party responsible for submitting the license application. Yet, the City has burdened Taylor for her landlord's failure to fulfill his legal obligations to the City. *Id.* ¶¶ 12–13. Like in *Sterling, Winston, Golden*, and *O'Neal*, the denial of water service "divorces itself entirely from the reality of legal accountability for the debt involved." *Sterling*, 579 F.2d at 1355 (cleaned up). It was thus irrational for the City to shut off Taylor's water service due to licensing failures that were entirely outside of her control. The City's actions fail even the exceedingly deferential rational-basis review and violate the Equal Protection Clause.

Plus, this logic would hold even if the City's version of the facts were taken as true. Even if Chase or his agent tampered with the water shut-off valve and unlawfully turned the water back on at the property, Taylor would still be an innocent third party. Def.'s Resp. Br. ¶ 10. The City does not allege that Taylor played any role in tampering with the water supply. *Id.* So shutting off the water service to the property would still irrationally punish an innocent tenant for the actions of her landlord.

8

Thus, regardless of the version of the facts that is accepted as true, the City's actions still fail rational-basis review. Taylor successfully states an Equal Protection claim.[4]

### 2. Due Process

Next, the City asserts that Taylor's procedural and substantive due process claims both fail because she does not have a cognizable property interest in continued water service. Def.'s Br. at 2–3. That argument succeeds.

Because no fundamental right or liberty interest is at play here, to state a substantive due process claim, Taylor "must allege that the [City] deprived [her] of a state-created property interest by arbitrary and irrational conduct and that the defendants either committed a separate constitutional violation or state law remedies are inadequate." *Campos v. Cook County*, 932 F.3d 972, 975 (7th Cir. 2019). Similarly, to state a procedural due process claim, "a plaintiff must make a threshold showing that it possessed a constitutionally protected property interest." *145 Fisk, LLC v. Nicklas*, 986 F.3d 759, 768 (7th Cir. 2021) (cleaned up). So for both of her due process claims to survive the motion to dismiss, Taylor must adequately allege that she has a constitutionally protected property interest in continued water service. She fails to do so.

---

[4]It is worth noting that this holding does *not* prevent the City from enforcing building codes or evicting tenants if there is a safety risk arising from the conditions of a residence. For example, if a landlord failed to comply with an electrical-wiring safety regulation, then a tenant could not continue to reside in the apartment, despite the safety risk, just by saying that she was "innocent." Here, however, the City's condemnation of the property was based on the lack of water service—which was the result of the *City*'s action.

Taylor begins by arguing that a Cook County ordinance grants her a federally protected property right to water service. Pl.'s Resp. Br. at 4–5. Specifically, she notes that the Cook County Residential Tenant and Landlord Ordinance grants residents the "'right to [a] dwelling that materially complies with habitability,'" which includes the right to "'adequate heat, cold water, and hot water'" in their rental property. *Id.* at 5 (quoting Cook County Code, § 42-105(c)(3)(h)). But Taylor neglects to mention that the Ordinance governs the relationship between *landlords* and tenants, not the relationship between the *City* and its residents. The stated purpose of the Ordinance is to "protect and promote the public health, safety, and welfare of its citizens, to establish the rights and obligations of the *tenant and the landlord* in the rental of dwelling units, and to encourage the *tenant and the landlord* to maintain and improve the quality of housing." R. 38-1, Def.'s Reply Br., Exh. 1, Cook County Code, § 42-101(b) (emphasis added). Also, the Ordinance's discussion of remedies states that "if the landlord fails to supply heat, running water, hot water, electricity, gas or plumbing that the rental agreement requires the landlord to provide … the tenant shall deliver written notice to the landlord specifying the service to be restored." *Id.* § 42-106(e)(1)(a-d). The Ordinance never says that the *City* is required to provide running water to all residents and never provides any remedies that the resident has against the City in case of water shutoff. *See id.* So the Ordinance's discussion of water service is limited to the landlord's, rather than the City's, responsibility to provide that service. Thus, although the Ordinance might impose an obligation on *landlords* to

10

provide water service, it does nothing to create a property interest in water service that is enforceable against the City. Taylor's argument is unsuccessful.

Next, Taylor cites *Sterling* and argues that if a municipality has laid out procedural requirements to obtain water service and a tenant has satisfied those requirements, then the tenant obtains a property interest in water service. Pl.'s Resp. Br. at 6–7. Taylor says that because her landlord ultimately submitted the required license applications to the City, all of the procedural requirements for water service have been satisfied and she has a property interest in water service. *Id.* at 7–8. This argument is also unsuccessful.

The City has placed a moratorium on issuing rental licenses. Am. Compl. ¶ 23. Taylor recognizes that obtaining—not just applying for—a rental license is a City-imposed procedural requirement for getting water service. *Id.* ¶ 13. And it is not possible for Taylor's landlord to get a license as long as the rental-license moratorium is in place. So unlike in *Sterling*, Taylor and Chase have *not* actually satisfied the City's requirements for water service. And Taylor does not contend that it is unlawful for the City to impose a rental-license moratorium. *See* Pl.'s Resp. Br. So she does not have a property interest in water service.

Finally, Taylor asserts that she formed an implied contract with the City for water services, which in turn created a property right. Pl.'s Resp. Br. at 8–9. This argument also misses its mark. In support of her contention that she has a property right stemming from an implied contract, Taylor cites *Wayt v. Town of Crothersville*, 866 F. Supp. 2d 1008 (S.D. Ind. 2012). In *Wayt*, the plaintiff had a course of dealing

11

with the utility company where she would fail to pay her water bill, the water would be shut off, she would apply for reinstatement of service, and the water would be turned back on upon payment of the past due bill. *Id.* at 1019. There is no such course of dealing here. Unlike in *Wayt*, the City never voluntarily and knowingly provided Taylor with water service. Although the water was turned on in Taylor's home when she first moved in, the City soon identified that her landlord had failed to submit the required rental-license application, so the City shut off her water service. Am. Compl. ¶¶ 9–13. Thus, the City mistakenly provided service for a period of time and then promptly turned off the service once it recognized that the property was out of compliance with City requirements. So the City never implicitly or explicitly agreed to provide Taylor with water service. The reasoning from *Wayt* does not apply here, and no implied contract was ever created between Taylor and the City. Taylor's final argument fails, and she does not have a property interest in continued water service to her home. Because she has no constitutionally protected property interest, both of Taylor's due process claims are dismissed.

## B. Preliminary Injunction

Turning to the motion for preliminary injunction, Taylor must show: "(1) a likelihood of success on the merits; (2) a lack of an adequate remedy at law; and (3) that an irreparable harm will result if the injunction is not granted." *Lambert*, 498 F.3d at 451 (cleaned up). If Taylor makes that showing, then the court balances the nature and degree of the potential harm to each party and the public interest. *Girl Scouts,* 549 F.3d at 1086.

Starting with the likelihood of success: as explained above, although Taylor's Due Process claims fail, her Equal Protection claim survived the dismissal motion and appears to be a valid premise for retaining water service. So one of her claims is meritorious. Next, the City concedes that damages cannot adequately provide a remedy for Taylor's lack of water service and that irreparable harm will result if Taylor does not receive an injunction. Def.'s Resp. Br. at 7. So the only question is whether the balance of the equities and public interest tips in Taylor's favor. It does.

To balance the equities, "the court must compare the potential irreparable harms faced by both parties to the suit—the irreparable harm risked by the moving party in the absence of a preliminary injunction against the irreparable harm risked by the nonmoving party if the preliminary injunction is granted." *Girl Scouts*, 549 F.3d at 1100. Taylor notes that without an injunction, her and her children would not have access to running water in their home. Pl.'s Mot. ¶ 15. That would mean that her family would be "unable to bath[e], wash, cook, flush toilets, or clean the home." *Id.* On the other hand, the City argues that issuing a preliminary injunction "would strip the City of its power to regulate its own utility services and create a perception that persons can tamper with the City's water system without consequences." Def.'s Resp. Br. at 7. Taylor has the better argument here.

Running water is a basic human need, so leaving Taylor and her family without it would put them in a perilous and inhumane living situation. As Taylor correctly notes, losing running water would mean that her and her family would be unable to maintain basic hygiene and would be unable to care for themselves properly. Pl.'s

Mot. ¶ 15. Those serious considerations are weighed against the consequences to the City if it is required to restore water service to Taylor. Although the City argues that it would lose the ability to regulate its utility services, that is not entirely true. Def.'s Resp. Br. at 7. Even if the City had to restore water service to Taylor, it could continue to regulate its utility services by imposing fines on homes that do not comply with licensing or other requirements. Similarly, even assuming that the City is correct that Chase or his agent tampered with the water supply, the City can still show that there are consequences to those actions by imposing fines on them. Restoring water service to Taylor does not prevent the City from using fines to regulate its water services and punish those responsible for unlawful actions. Thus, the balance of equities weighs in Taylor's favor.

In considering the public interest, the Court must evaluate "the ramifications of granting or denying the preliminary injunction on nonparties to the litigation." *Girl Scouts*, 549 F.3d at 1100. As explained above, even if an injunction were granted, the City would maintain the ability to regulate its utilities and to impose consequences on those who tamper with the water supply. So there is little harm to the public interest in granting an injunction. Plus, as explained above, granting an injunction would protect Taylor's Equal Protection rights. And "upholding constitutional rights surely serves the public interest." *Centro Tepeyac v. Montgomery County*, 722 F.3d 184, 191 (4th Cir. 2013) (cleaned up); *see also Camelot Banquet Room, Inc. v. U.S. Small Bus. Admin.*, 24 F. 4th 640, 651 (7th Cir. 2022). So like with the balance of

equities, the public interest favors issuing an injunction here. Thus, the Court grants Taylor's motion for preliminary injunction.

## IV. Conclusion

The City of Markham's motion to dismiss, R. 26, is denied as to the Equal Protection claim but granted as to the Due Process claims. The Due Process claims are dismissed without prejudice. If Taylor wishes to replead them, then the second amended complaint is due by August 29, 2025. Taylor's motion for preliminary injunction, R. 1-2, is granted. For the duration of this lawsuit, the City of Markham shall not turn off water service at the residence rented by Iesha Taylor, namely, 16236 Spaulding Avenue, Markham, Illinois, on the basis that anyone other than she has failed to comply with City of Markham ordinances, policies, or requirements.

This order applies to the City of Markham, to its officers, agents, servants, employees, and attorneys; and to any other persons who are in active concert or participation with anyone the City or those to its officers, agents, servants, employees, and attorneys. Fed. R. Civ. P. 65(d)(2).

For now, no bond is required, given the nature of the right at stake, as well as the City's unquestioned authority to collect payment for the ongoing water service. The City may propose a bond if it wishes and file an appropriate motion.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: August 15, 2025

15